**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHEASTERN DIVISION**

| | |
|---|---|
| United States of America, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| -v- ) | Case No. 2:09-cr-7 |
| ) | Case No. 2:11-cv-61 |
| Anthony Charboneau, III, ) | |
| ) | **ORDER** |
| Defendant. ) | |

Before the Court is defendant Anthony Charboneau's motion pursuant to 28 U.S.C. § 2255 which was filed on June 27, 2011. See Docket No. 75. The motion is filed pro se. The government filed an brief in opposition to the defendant's motion on August 30, 2011. See Docket No. 77. Charboneau filed a reply on October 3, 2011. See Docket No. 78. For the reasons explained below, the motion is denied.

**I.   BACKGROUND**

Charboneau was found guilty of one count of sexual abuse of a minor (count one) and one count of abusive sexual contact (count two) on May 19, 2009. He was sentenced to 46 months imprisonment on August 13, 2009. An appeal was taken. The conviction was affirmed on July 30, 2010. United States v. Charboneau, 613 F.3d 860 (8th Cir. 2010). Charboneau raises two issues in his motion: (1) his Sixth Amendment public trial right was violated when the courtroom was temporarily closed, and, (2) ineffective assistance of appellate counsel in failing to raise the public trial issue on direct appeal.

1

The superseding indictment in this case charged unlawful sexual contacts with two minor females. Count one alleged sexual abuse of a minor, J.B., who was at least twelve but less than sixteen years old when the abuse occurred. J.B. was twenty years old at the time of trial. Count two alleged abusive sexual contact with a minor, D.C., who was at least twelve but less than sixteen years old when the abuse occurred. D.C. is Charboneau's biological daughter. D.C. was thirteen years old at the time of trial. The government moved to close the courtroom to the public during the testimony of D.C. under 18 U.S.C. § 3509(e). Section 3509(e) permits the court to close the courtroom during the testimony of child upon a finding that requiring a child to testify in open court would cause the child substantial psychological harm. The court granted the motion over the objection of defense counsel. The following sidebar discussion was held outside the hearing of the jury prior to the motion being granted:

> MR. DELORME [the prosecutor]: Your Honor, next is a witness, she's 13 years old. She's 13 years of age. And what I'm looking at, Your Honor, is doing a motion under 3509 which allows for the Court to clear the courtroom of non-interested people. There's a lot of family members in the back and it's going to be hard enough for her to testify and confront her father, who is the defendant in this case, let alone all these witnesses in the back. The law does allow the Court to clear the courtroom of non-interested people.
>
> THE COURT: That's probably -- well, that is of course true, but isn't there some need for a threshold showing of difficulty before that's appropriate? And I didn't give you people a chance to respond. What do you think?
>
> MR. ROSENQUIST [defense counsel]: My response, Your Honor, was that Mr. Delorme prior to any court at all today during preliminary instructions indicated that although he had a DVD he filed that or filed a motion to use it simply because he didn't know whether or not she's going to be able to testify, if she'd freeze up. He told the Court in our presence that he thought she was going to do just fine and I don't know that she isn't going to do just fine. So I don't know that there's an extraordinary need.
>
> MR. DELORME [the prosecutor]: Your Honor, and I meant that she'd do fine insofar as not freezing up to the point that I could get that in. What I can tell

you is that last night when I prepped this child she broke down quite a bit. And being in this room with a jury is going to be difficult, with the father who's going to be difficult, with all these other eyes that are relatives in the back of the courtroom looking at her. I think it's going to cause some psychological harm to this child.

MR. ROSENQUIST [defense counsel]: Your Honor, I don't know that any more psychological harm is going to be caused to this child than what she's already endured.

THE COURT: Well, I'll tell you quite frankly I often think that trial is far worse than the crime for which there is the accused in terms of the effect on the victims. I've had little people on the witness stand who look like deer in the headlights, you know, with big round eyes. It's not a pleasant thing. I hate to have you put her on and have her freeze because of the presence of these people, and I'm going to grant your request and wait for the Fargo Forum to pillar me for having so done, but I will grant your request.

MR. ROSENQUIST [defense counsel]: Thank you, Your Honor.

(Sidebar concluded.)

(In open court, all counsel and the Defendant present, in the presence and hearing of the jury:)

THE COURT: Ladies and gentlemen, we're going to have a young lady, child witness on the witness stand, and in an effort to make this as easy as possible a request has been made to me that I remove you from the courtroom at least temporarily during her testimony. So counsel have made a motion that I clear the courtroom of all non-essential people during her testimony. And out of fairness to everyone I think that -- I have granted that request so I'm going to chase you out for a few minutes and we'll notify you when you can come back.

Docket No. 58, pp.161-63.

The courtroom was closed to all spectators during the testimony of D.C., including during her testimony as a rebuttal witness for the government, but was open to all spectators during the rest of trial, including the testimony of J.B. The transcript of D.C.'s testimony was and is open to the public. There was no media interest in the case and so no members of the press were excluded from the courtroom.

3

## II. DISCUSSION

A motion made pursuant to 28 U.S.C. § 2255 requires a showing of either constitutional or jurisdictional error, or a "fundamental defect" resulting in a "complete miscarriage of justice." Davis v. United States, 417 U.S. 333, 346 (1974); Hill v. United States, 368 U.S. 424, 428 (1962). A § 2255 motion is not a substitute for a direct appeal and is not the proper way to complain about simple trial errors. Anderson v. United States, 25 F.3d 704, 706 (8th Cir. 1994). A § 2255 movant "must clear a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152, 166 (1982). Section 2255 is "intended to afford federal prisoners a remedy identical in scope to federal habeas corpus." Davis, 417 U.S. at 343.

Charboneau argues in his motion that his Sixth Amendment right to a public trial was violated when the Court closed the courtroom during the testimony of D.C., who was thirteen years of age at the time of trial and one of two alleged victims. Charboneau also claims ineffective assistance of appellate counsel based upon the failure of appellate counsel to raise the public trial claim on direct appeal. Charboneau argues the courtroom closure amounts to structural error and asks that his conviction be overturned. The government argues the claims are meritless and that Charboneau has procedurally defaulted his public trial claim by failing to raise it on direct appeal.

### A. Procedural Default

There is no question that Charboneau failed to raise the public trial argument on direct appeal and thus the public trial claim has been procedurally defaulted. The procedural default rule does not apply to claims of ineffective assistance of counsel. Massaro v. United States, 538 U.S. 500, 504-05

4

((2003); United States v. Smith, 843 F.2d 1148, 1150 (8th Cir. 1988). "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent." Becht v. United States, 403 F.3d 541, 545 (8th Cir. 2005) (quoting Bousley v. United States, 523 U.S. 614, 622 (1998)). Charboneau does not claim actual innocence. Consequently, the Court need only consider whether he has demonstrated both cause and actual prejudice. The cause and actual prejudice that must be shown to overcome a procedurally defaulted claim may be met by a showing of ineffective assistance of counsel. Becht, 403 F.3d at 545. Thus, the showing necessary for Charboneau to proceed on his public trial claim is the same as the showing necessary to prevail on his ineffective assistance of appellate counsel claim. Becht, 403 F.3d at 545; see also Owens v. United States, 483 F.3d 48, 64 n.13 (1st Cir. 2007) (noting Strickland prejudice and the showing of prejudice necessary to overcome procedural default overlap and may be addressed simultaneously).

### B. Ineffective Assistance of Counsel

The two-part test for ineffective assistance of counsel was announced in Strickland v. Washington, 466 U.S. 668, 687 (1984). The test is the same no matter whether the alleged ineffectiveness is attributable to trial or appellate counsel. See United States v. Brown, 528 F.3d 1030, 1032 (8th Cir. 2008). Charboneau must first establish that counsel's representation was constitutionally deficient, which requires a showing that counsel's performance fell below an objective standard of reasonableness. Strickland, 466 U.S. at 687-88; see also Wiggins v. Smith, 539 U.S. 510 (2003). This requires showing that counsel made errors so serious that counsel was not

5

functioning as the counsel guaranteed the defendant by the Sixth Amendment. Strickland, 466 U.S. at 687. In considering whether this showing has been accomplished, "[j]udicial scrutiny of counsel's performance must be highly deferential." Id. at 689. If the underlying claim would have been rejected, counsel's performance is not deficient. Carter v. Hopkins, 92 F.3d 666, 671 (8th Cir. 1996). Courts seek to "eliminate the distorting effects of hindsight" by examining counsel's performance from counsel's perspective at the time of the alleged error. Id. The Court need not address the issue of the reasonableness if the defendant has failed to establish prejudice. Strickland, 466 U.S. at 696.

Charboneau must also show that the deficient performance prejudiced his defense. Strickland, 466 U.S. at 687. This requires proving that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been more favorable to the defendant. Id. at 690-91. A reasonable probability is one "sufficient to undermine confidence in the outcome." Wiggins v. Smith, 539 U.S. 510, 534 (2003). In the context of alleged ineffectiveness of appellate counsel, it must be shown to a reasonable probability that the outcome of the appeal would have been different in order to demonstrate prejudice. Brown, 528 F.3d at 1032. Failure to raise a issue on appeal is presumed to be sound strategy absent evidence to the contrary. Id.

In a few limited instances, the prejudice component of the Strickland analysis may be presumed if the very nature of the deficient performance constitutes structural error. McGurk v. Stenburg, 163 F.3d 470, 474 (8th Cir. 1998). Structural errors affect the framework within which the trial proceeds to such a degree that the accuracy and reliability of the trial itself is called into question and reversal is automatic. Id.; Hatcher v. Hopkins, 256 F.3d 761, 764 (2001). A finding of structural error has been limited to a very narrow class of cases including: complete denial of counsel, trial by a biased judge, racial discrimination in selection of a grand jury, denial of the right to self-

representation, a defective reasonable doubt instruction, and, notably, denial of a public trial. Arizona v. Fulminante, 499 U.S. 279, 310 (1991); Neder v. United States, 527 U.S. 1, 8 (1999). Thus, the court must turn to the merits of the public trial claim in order to resolve the motion.

### C. Public Trial Guarantee

In order to determine whether there is a reasonable probability the result of Charboneau's appeal would have been different the Court must consider what the Eighth Circuit would have done had Charboneau raised his public trial claim on appeal. Becht, 403 F.3d 546. Had the issue been raised it would have been reviewed under the standard set forth in Waller v. Georgia, 467 U.S. 39 (1984). United States v. Thunder, 438 F.3d 866, 867 (8th Cir. 2006) (applying Waller).

The right to a public trial is guaranteed to criminal defendants under the Sixth Amendment. The First Amendment extends a comparable right to the public and press. Waller, 467 U.S. at 46. The benefits of conducting trials in the open include: helping to insure that criminal defendants are fairly dealt with; encouraging judges, prosecutors, and jurors to act responsibly; encouraging witnesses to come forward and discouraging perjury; and giving the public the opportunity to observe the administration of justice. E.g., Waller, 467 U.S. at 46-47; Gannett Co. v. DePasquale, 443 U.S. 368, 383 (1979). Because of the intangible nature of these benefits, prejudice is presumed in the event of a violation of the public trial right. Waller, 467 U.S. at 49-50; Neder, 527 U.S. at 8 (denial of a public trial is a structural error)

However, the public trial right is not absolute. In Waller, the Supreme Court stated it may give way in "rare" cases to other rights or interests. Id at 45. The Supreme Court adopted the following test for balancing the relevant interests when a court is faced with having to decide

7

whether or not to close a court proceeding:

1. the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced,

2. the closure must be no broader than necessary to protect that interest,

3. the trial court must consider reasonable alternatives to closing the proceeding, and

4. the trial court must make findings adequate to support the closure.

Id at 48.

Charboneau argues the discussions had prior to the closure of the courtroom did not satisfy the Waller test while the government argues otherwise.

### 1. Overriding Interest

The overriding interest at stake in this case was the psychological well-being of D.C. while she related the details of sexual abuse visited upon her by her father. As related by the prosecutor at the time of the motion, D.C. had a great deal of difficulty and broke down quite a bit the night before trial during trial preparations. The prosecutor was concerned that requiring D.C. to testify in an open courtroom would cause her psychological harm, trauma and embarrassment.

The first prong of the Waller test is frequently met when the witness is a child victim of sexual assault. McIntosh v. United States, 933 A.2d 370, 378 (D.C. Cir. 2007) (recognizing societal interest in protecting the physical and psychological well-being of young sexual assault victims called to testify in open court); Bell v. Jarvis, 236 F.3d 149, 167 (4th Cir. 2000) (noting such a closure is not uncommon as sexual assault carries with it a violation of self which leads to deep embarrassment and psychological harm, the mitigation of which is highly justifiable); In re The Spokesman-Review; 569 F. Supp. 2d 1095, 1101 (D. Idaho 2008) (finding compelling interest in protecting a young sexual assault victim). In a pre-Waller discussion of the issue, the Supreme Court

described the interest in safeguarding the physical and psychological well-being of minor victims of sex crimes as compelling. Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 607-08 (1982). Such determinations are indisputably proper provided the decision is made on a case-by-case basis with particularized findings and is not made on a mandatory basis. Bell, 236 F.3d at 168.

The Court has no difficulty concluding the interest advanced by government in this case was overriding and thus satisfied the first prong of the Waller test.

### 2. Scope of Closure

The closure in this case was a narrow one. The courtroom was only closed during the testimony of D.C. and a transcript of D.C.'s testimony was and is available to the public. See Docket Nos. 58 and 59. The individuals who were required to leave the courtroom consisted of approximately eight members of the Charboneau's family who generally supported Charboneau's claim of innocence. Present during the testimony of D.C. were the jury, counsel, Charboneau, the court reporter, the courtroom deputy and a number of other court personnel. The Courtroom was open to the public during the testimony of J.B. The trial garnered no media interest and so no media were excluded from the courtroom. The closure was sufficient to protect D.C.'s psychological well-being but no broader than necessary. Since the closure was limited to the testimony of D.C. it was as narrowly tailored as possible to protect the overriding interest at stake. Accordingly, the second prong of the Waller test was satisfied. See McIntosh, 933 A.2d at 378 (finding second prong met where closure was limited to the child victim's testimony, and a transcript was available); Bell, 236 F.3d at 168-69 (same).

### 3. Alternatives

Waller requires trial courts to consider reasonable alternatives to closing the courtroom. However, Charboneau has not identified any less restrictive alternatives which the Court might have employed while still protecting D.C. during her testimony. Counsel identified no alternatives at the time of trial and in the Court's experience, which is considerable in cases of sexually abused children testifying, no reasonable alternatives were readily apparent or available. Trial judges should not be required to "conjure up alternatives methods of protecting the witness only to reject his own proposal." Bell, 236 F.3d at 170; Bowden v. Keane, 237 F.3d 125, 131 (2nd Cir. 2001) (trial judges have no obligation to consider alternatives sua sponte). The closure was temporary and as narrowly tailored as possible under the circumstances. The courtroom was closed during the testimony of only a single witness, D.C., and was open to the public during the testimony of the other victim, J.B. The Court has considered the use of screens and closed circuit television in other cases but the confrontation clause issues raised by these alternatives is more troubling than the closure ordered here. The Court ordered the narrowest closure it could think of under the circumstances that would protect D.C. while keeping the intrusion upon the public trial right to a minimum. Even with the advantage of hindsight, no viable alternatives are now apparent and the Court is confident the third prong of the Waller test was met.

### 4. Adequacy of Court's Findings

Waller requires adequate findings to support a courtroom closure. Waller, 467 U.S. at 48. Charboneau argues the Court's findings were inadequate. Waller does not specify any particular

format or require extensive findings.  Bell, 236 F.3d at 172.  Factors which should be considered when determining whether to close the courtroom include the child's age, psychological maturity and understanding, the nature of the crime alleged, the desires of the victim, and the interests of parents and relatives.  Bell, 236 F.3d at171 citing Globe Newspaper, 457 U.S. at 608.  Reviewing courts are permitted to glean from the record itself whether the closure was proper.  United States v. Farmer, 32 F.3d 369, 371 (8th Cir. 1994); Bowden, 237 F.3d at 132.  On the other hand if the Court hears no argument on the matter and makes no findings reversal is proper.  United States v. Thunder, 438 F.3d 866, 868 (8th Cir. 2006).  The Court has reviewed its findings and the record as a whole.  The Court concludes its finding, while certainly not extensive, were at least adequate to satisfy Waller.

D.C. was thirteen years old at the time of trial, a tender and awkward age for a young lady under any circumstances.  The Court and all involved were certainly aware of the charge and the nature of the alleged conduct.  The family members excluded were, of course, family members of both Charboneau and D.C.  The Court was also aware that the charge had divided the family and D.C. was nervous about testifying in front of her family members.  Testifying in a federal courtroom can be intimidating for any witness.  Testifying as to sexual abuse by one's own father in front of unsupportive family members and the general public can be traumatic.  See Farmer, 32 F.3d at 372 (finding victim's age, nature of offense and fear of the defendant and his family sufficient to justify closure).  The Court made it decision based on statements from the prosecutor that D.C. had broke down a number of times during private trial preparations.  The Court concluded closing the courtroom to the public would lessen the trauma to D.C. after finding that testifying can be worse for child victim of sexual assault than the crime itself.  Additional findings would have amounted to little more than stating the obvious.  See Bell, 236 F.3d at 172.  The findings were limited but so was

the scope of the closure. See Brown v. Kuhlmann, 142 F.3d 529, 538 (2nd Cir. 1998) (finding a positive correlation between the scope of the closure and the strength of the trial court's findings).

D.C. had some difficulty testifying even with the courtroom closed and had to be asked to speak up a number of times. See Docket No. 58, pp. 165, 170, 172, 174, 176. The Court recognizes that courtrooms should not be closed every time a child testifies as to sexual abuse, but in some cases it is necessary and this was one of those cases.

Having concluded closure was proper under Waller, both of Charboneau's claims fail.[1] Although confident of its handling of this matter, the Court realizes that reasonable jurists might disagree. The gravity of the right involved is considerable and more than one trial court has been reversed based on a courtroom closure. Consequently, the Court will issue a certificate of appealability as to both issues raised in this motion.

### III. CONCLUSION

Based upon the entire file and upon the foregoing discussion, it is **ORDERED** that:

1. Charboneau's § 2255 motion is **DENIED**.

2. Under 28 U.S.C. § 2253(c)(2), a certificate of appealability may only be issued if the movant has made a substantial showing of the denial of a constitutional right. When the court has rejected a movant's claim on the merits, the substantial showing required is that the movant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)); see also United States v. Lambros, 404 F.3d 1034, 1036-37 (8th Cir. 2005); Garrett v. U.S., 211 F.3d 1075, 1076-77 (8th Cir. 2000). Charboneau has

---

[1] The government raises the interesting argument that even if the Court concluded the closure of the courtroom was improper the conviction as to J.B. should stand as the courtroom was only closed during the testimony of D.C. and was open to the public during the testimony of J.B. The government's argument is not well-developed and Charboneau did not address the issue. Having determined the closure was proper under Waller, the Court need not address the issue.

12

made such a showing.

The Court grants a certificate of appealability as to the issues raised in this motion, namely:

A. Whether Charboneau's Sixth Amendment right to a public trial was violated when the courtroom was closed during the testimony of D.C.

B. Whether defense counsel's failure to raise the Sixth Amendment public trial issue on direct appeal constitutes ineffective assistance of counsel.

3. The Court certifies that an appeal from the denial of the motion may be taken in forma pauperis because such an appeal would not be frivolous.

**IT IS SO ORDERED.**

Dated this 24th day of October, 2011.

/s/ *Patrick A. Conmy*
Patrick A. Conmy, Senior District Judge
United States District Court